IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BAYER CROPSCIENCE LP and MONSANTO TECHNOLOGY LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BRIAN G. IRIONS d/b/a BRIAN IRIONS FARMS and/or IRIONS FARMS, <br><br> Defendant. | Case No. _____ |

**PLAINTIFFS' ORIGINAL COMPLAINT**
**FOR DAMAGES AND INJUNCTIVE RELIEF**

American farmers rely on innovative, patented seed technologies to maximize yields, manage weeds in their fields, and control pests. Bayer CropScience develops those critical technologies through extensive investment in research and development. Bayer CropScience patents the resulting seed technologies and licenses them to growers. The majority of growers abide by the terms of their license agreements. Some growers, however, abuse their licenses or ignore them altogether. In doing so, they infringe Bayer CropScience's patents, breach their licenses, and impinge Bayer CropScience's innovations, threatening the availability of these technologies for all growers.

Defendant is one of these infringing growers. He uses patented Xtend® seed technology for its superior germplasm and its pesticide tolerant traits over hundreds of acres in Southeast Missouri, but plants those acres with saved seeds. Rather than purchase the seed from Bayer's authorized retailers and respecting the single-use license, Defendant cleaned and planted soybeans he saved from a prior harvest. That unauthorized saved seed contained Bayer

CropScience's Roundup Ready 2 Xtend® seed technology, which confers glyphosate and dicamba-tolerance, thereby infringing Bayer CropScience's patent rights.

While uncovering that infringing activity, Bayer CropScience discovered that Defendant was also infringing Bayer CropScience's patents and his license in other ways.  He compounded the injury to Bayer CropScience by illegally applying pesticide formulations not approved for use over the top of his Xtend® soybean crop, grown from saved seeds.  Further, Defendant sprayed dicamba over the top of his Xtend® soybean crop after Missouri's cut-off date for application of dicamba products over soybeans.  All of Defendant's aforementioned conduct was in violation of Bayer CropScience's patents, contractual rights, and its legitimate business expectancies.

Bayer CropScience's XtendiMax® with VaporGrip® Technology ("XtendiMax®") is not responsible for the off-target movement of other dicamba formulations applied unlawfully, or the alleged damage to crops alleged by other growers as a result.  Rather, Bayer CropScience believes these incidents in the Bootheel (and elsewhere)—and attendant false accusations regarding XtendiMax®'s EPA registration—are in significant part the result of unapproved, higher volatility dicamba products used illegally by patent infringing growers like Defendant. As a result, since its launch, XtendiMax® has been unfairly blamed for this alleged off-target movement, especially in areas with significant amounts of illegal applications like the Missouri Bootheel.

Plaintiffs, for their Original Complaint against Brian G. Irions d/b/a Brian Irions Farms and/or Irions Farms ("Irions" or "Defendant"), would respectfully show this Court the following:

## I.   INTRODUCTION

1.     Defendant knowingly, intentionally, and willfully committed patent infringement by making, using, offering to sell, and/or selling soybean seed with Bayer CropScience's

patented technology, including its Roundup Ready 2 Yield®, Roundup Ready 2 Xtend®, and/or XtendFlex® soybean seed technology, without authorization from Plaintiffs by planting soybeans, containing one or more of the aforementioned technologies, that he saved from a prior harvest.  Defendant also breached the express terms of his contract with Bayer CropScience through these actions.

2.      Defendant further knowingly, intentionally, and willfully committed patent infringement by applying over the top of his Roundup Ready 2 Xtend® and/or XtendFlex® soybean plants unapproved higher-volatility formulations of dicamba herbicide, not labeled for use with Roundup Ready 2 Xtend® and/or XtendFlex® soybean seed technology, as well as by unlawfully applying dicamba herbicide to Roundup Ready 2 Xtend® and/or XtendFlex® soybean plants after June 30, 2022, the "cut-off" date provided by the Environmental Protection Agency ("EPA") and the State of Missouri.  After that date in 2022, all dicamba herbicides were prohibited from being applied over the top of soybean crops in Missouri.  These same actions breached the express terms of Defendant's contract with Bayer CropScience, tortiously interfered with Bayer CropScience's business expectancies with the EPA and its soybean and cotton grower customers, and negligently harmed Bayer CropScience.

## II.      PARTIES

**Plaintiffs**

3.      Bayer CropScience LP is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business in St. Louis, Missouri.

4.      Monsanto Technology LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in St. Louis, Missouri.[1]

**Defendant**

5.      Defendant Irions is an individual and a citizen of Missouri.  His current address, on information and belief, is 504 Kristina Reed St., Hayti, MO 63851.

6.      Defendant is engaged in a farming business that involves the planting of crops, including soybeans, in Pemiscot County, Missouri.  Between 2020 and 2022, Defendant farmed approximately 2,500 to 3,600 acres of soybeans annually.  On information and belief, Defendant has farmed as Brian Irions Farms and/or Irions Farms.

7.      Defendant may be served with summons at 504 Kristina Reed St., Hayti, MO 63851, or wherever he may be found.

## III.      JURISDICTION AND VENUE

8.      This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. § 1, *et. seq.*, including 35 U.S.C. § 271.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because one or more of Plaintiffs' claims arise under the laws of the United States, as well as 28 U.S.C. § 1338, granting district courts original jurisdiction over any civil action regarding patents.

9.      This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all of Plaintiffs' non-federal question claims because they form part of the same case or controversy.

---

[1] Bayer CropScience LP and Monsanto Technology LLC may be referred to collectively herein as "Bayer CropScience."

10.     This Court has personal jurisdiction over Defendant, and venue is proper in this judicial district and division. Defendant resides in and operates his business in Pemiscot County, a county within the Eastern District of Missouri.  Venue also is proper in this judicial district because Plaintiffs' claims arose within this judicial district.  Specifically, Defendant committed patent infringement, breaches of contract, and tortious acts from his regular and established place of business in Pemiscot County, Missouri, and directed against Plaintiffs, located in St. Louis, Missouri within this division.  As such, venue is proper under 28 U.S.C. §§ 1391(b) and 1400(b), and Local Rule 2.07.

11.     In addition, the parties in this action agreed to personal jurisdiction in the Eastern District of Missouri, Eastern Division, and have designated this judicial district and division as the exclusive forum and venue for all disputes arising under the licensing agreements executed by Defendant.  A true and accurate copy of the licensing agreement executed by Defendant in 2010 is attached hereto as **Exhibit C**.  As such, personal jurisdiction and venue are proper.

### IV.     PATENTS-IN-SUIT

12.     United States Patent Number 9,944,945 ("the '945 patent"), a true and correct copy of which is attached hereto as **Exhibit A**, was issued on April 17, 2018

13.     United States Patent Number 7,838,729 ("the '729 patent"), a true and correct copy of which is attached hereto as **Exhibit B**, was issued on November 23, 2010.

14.     Monsanto Technology LLC is and has been the owner of the '945 and '729 patents for all times relevant to the events giving rise to this action.

### V.     FACTUAL BACKGROUND

**A.  Background of Bayer CropScience's Biotechnologies**

15.     This case concerns revolutionary biotechnologies, developed by Bayer CropScience after the investment of substantial time, expertise, and expense, including Roundup

Ready 2 Yield®, Roundup Ready 2 Xtend®, and/or XtendFlex® soybeans.  These patented technologies enable soybeans (and other crops) to tolerate glyphosate, or tolerate glyphosate and dicamba, widely used agricultural herbicides, and increase yields.  Glyphosate and dicamba-based herbicides can cause damage to conventional crops and non-crop plants that are not naturally resistant to the herbicides or have not been genetically modified to tolerate them.

16.     Bayer CropScience invested decades of research and hundreds of millions of dollars developing these biotechnologies to help farmers control weeds.  As reflected by farmers' widespread adoption, these technologies offer farmers significant economic benefits.  The technologies have decreased production costs for crops and have significantly reduced the amount of management time needed to grow crops, in part because they greatly simplify the treatment of weeds.

17.     Before the introduction of Bayer CropScience's earlier Roundup Ready® seeds, farmers often had to apply three or more different herbicides to achieve the same control of weeds that has been achieved using Roundup Ready® seeds together with glyphosate as the sole herbicide.  Roundup Ready® 2 Yield was developed to increase yield and maintain crop tolerance to glyphosate.

18.     The next generation of Bayer CropScience technologies, Roundup Ready 2 Xtend® and XtendFlex® seeds, can be used with glyphosate herbicide in combination with approved formulations of dicamba, or, in the case of XtendFlex® seeds, with additionally approved herbicides containing glufosinate, to combat weeds that may be resistant to one or more herbicides.  Roundup Ready® 2 Yield, Xtend®, and XtendFlex® technologies also enable farmers to reduce tillage of soil with heavy equipment, decreasing erosion and soil loss.

19.     To commercialize its inventions, and protect its valuable intellectual property rights, Bayer CropScience licenses its technology to competitors and individual farmers.

Farmers wishing to lawfully use the patented technology enter into and agree to be bound by the terms of a license agreement (a "Technology Stewardship Agreement" or "TSA"), which is updated annually, that gives the farmer/licensee permission to use the valuable seed technology pursuant to the terms of that limited use license. The TSA provides the licensed farmer, and only the licensed farmer, with a limited right to use the patented technology to grow a single commercial crop, the progeny seeds of which will also contain the patented technology. Farmers may not save seed containing the patented technology from harvested crops for planting on their own fields, nor may they save seed to sell or transfer to other farmers for planting. A farmer who wishes to grow crops from seeds containing Bayer CropScience's technology must obtain the seed only from an authorized dealer each planting season.

20.     Under the TSA, farmers also agree to apply only authorized or labeled herbicides, and they may not apply unapproved dicamba-based formulations over the top of their Xtend crops,[2] which is also illegal under FIFRA. They also agree to abide by a Technology User Guide ("TUG"), as amended every year, which includes a number of requirements, including a prohibition on the application of  unapproved herbicide formulations to crops containing Bayer CropScience traits.

21.     Licensed growers agree to the updated TSA and TUG on an annual basis before each soybean season. Signing the original TSA, thus becoming a licensed grower, and continuing to purchase soybean seeds under the new TSA for a subsequent soybean season bind growers to the terms of the updated TSA and TUG.

---

[2] As used here, "Xtend crops" denotes crops grown from Roundup Ready 2 Xtend® and XtendFlex® seeds.

22.     In addition, farmers must comply with governmental restrictions, which in 2022 included a prohibition on spraying dicamba herbicide on dicamba-tolerant soybean after a "cut-off" of June 30, 2022, as set by the EPA and the State of Missouri.

### Herbicides and Biotechnologies

23.     Roundup® branded herbicides are non-selective glyphosate-based herbicides manufactured by Bayer CropScience that, when applied to crops that are not tolerant to glyphosate, cause severe injury or destruction to non-tolerant plants, including soybean varieties that do not contain glyphosate-tolerant technology.  Soybean displays unique and identifiable symptomology after having been sprayed with Roundup® or other herbicides containing glyphosate, unless those soybeans contain glyphosate-tolerant technology such as the patented Roundup Ready 2 Yield®, Roundup Ready 2 Xtend®, or XtendFlex® technology.

24.     XtendiMax® with VaporGrip® Technology ("XtendiMax®") is a low-volatility, selective dicamba-based herbicide manufactured by Bayer CropScience that, when directly applied to crops that are not tolerant to dicamba, causes severe injury or destruction to non-tolerant plants, including soybean varieties that do not contain the patented Roundup Ready 2 Xtend® technology or XtendFlex® technology.  Soybean displays symptomology after being directly sprayed with XtendiMax® or other herbicides containing dicamba, unless it contains the patented Roundup Ready 2 Xtend® or XtendFlex® technology.  While XtendiMax® and certain other dicamba-based herbicides are now labeled and approved for use in crop ("over the top") with Roundup Ready 2 Xtend® and XtendFlex® soybeans, numerous unapproved and unlabeled[3] higher-volatility dicamba-based herbicides are sold by many other manufacturers for other uses.  Farmers are prohibited by law under the Federal Insecticide, Fungicide and

---

[3] As used here, "unlabeled" denotes not labeled for use with Xtend crops.

Rodenticide Act ("FIFRA"), by license, and by contract from using such unapproved and unlabeled formulations, formulated and sold by other manufacturers, over the top of their Xtend crops.

25.     Bayer CropScience's Roundup Ready 2 Yield®, Roundup Ready 2 Xtend®, and XtendFlex® technology are protected under multiple United States patents, including the '945 and '729 patents.  These patents were issued and assigned to Monsanto Technology LLC prior to the events giving rise to this action.

### Bayer CropScience's XtendiMax® Registration

26.     Bayer CropScience's XtendiMax® is a buffered, low volatility formulation of diglycolamine ("DGA") dicamba approved by the EPA.

27.     XtendiMax®, together with Roundup Ready 2 Xtend® and XtendFlex® seeds, provide growers unparalleled weed protection and yield potential.  They are tools for growers to be successful in growing cotton and soybeans.

28.     Unlawful applications of older dicamba formulations over crops grown from Roundup Ready 2 Xtend® and XtendFlex® seeds are threatening the continued EPA registration of XtendiMax®, Bayer CropScience's reasonable commercial expectations, and law-abiding growers' access to breakthrough weed control technology.

29.     In the absence of continued EPA registration, Bayer CropScience would not be able to continue to commercialize XtendiMax®.  In the absence of the continued commercialization of XtendiMax®, neither Bayer CropScience nor growers would be able to reap the benefits of Bayer CropScience's substantial investment in XtendiMax®'s development. Further, without registration of XtendiMax® or any other form of dicamba approved for use over the top of Xtend crops, growers would be unable to reap the full benefits of Roundup Ready 2 Xtend® and XtendFlex® seeds.

<u>**The EPA's Initial Registration of XtendiMax® and Supporting Data**</u>

30.     The EPA conditionally registered XtendiMax® for a period of two years in November 2016.  *See* ENVIRONMENTAL PROTECTION AGENCY, *Final Registration of Dicamba on Dicamba-Tolerant Cotton and Soybean* (Nov. 9, 2016), *available at* https://www.regulations.gov/docket/EPA-HQ-OPP-2016-0187.

31.     The conditional registration was granted for new uses of the herbicide dicamba on Xtend crops.  It permitted such uses in 34 states, including Missouri.

32.     In considering the registration, the EPA assessed volatility studies conducted on the XtendiMax® formulation as well as older dicamba formulations more prone to off-target movement, and determined that XtendiMax® offers the user a product with less potential to volatilize and move off the target area.  The agency therefore granted the new uses for dicamba but only with XtendiMax® or other similar low-volatility dicamba formulations.  *Id.*  The new uses permitted post-emergence (over-the-top) XtendiMax® applications to Xtend crops.  Prior to the registration of XtendiMax®, various dicamba formulations were registered for use on preplant and pre-harvest soybeans and on preplant and postharvest cotton, as well as uses on various grass crops, such as corn and sorghum.

33.     Data shows that: dimethylamine ("<u>DMA</u>") formulations are the most volatile formulation of dicamba; DGA formulations are less volatile than DMA formulations; and a buffered DGA formulation, such as Bayer CropScience's XtendiMax®, is less volatile than a stand-alone DGA formulation of dicamba.

34.     The registration of XtendiMax® in 2016 ushered in new weed-control measures for the 2017 crop year, the first season growers could lawfully use a dicamba formulation over the top of an Xtend crop.  Other DMA and DGA formulations were not then, and never have

been, approved for use over Xtend crops, with the exception of Engenia® and Tavium®
herbicides, which were subsequently approved for use with Xtend crops.

35.     XtendiMax®'s conditional registration on November 9, 2016 followed more than
six years of careful analysis by the EPA.  *See id.* at 3 (noting that the first application for use of
dicamba on genetically engineered soybeans was received by the EPA on April 28, 2010).

36.     As part of its analysis of XtendiMax® prior to registration, the EPA considered
academic and industry submissions regarding the potential for off-target movement from drift
during XtendiMax® applications and from volatilization of XtendiMax® after application.  *See
id.* at 17-18. The EPA also considered more than 21,000 public comments.  *See id.* at 27.

37.     The EPA analyzed XtendiMax®'s drift and volatility potential.  *See, e.g.*,
ENVIRONMENTAL PROTECTION AGENCY, *Dicamba DGA: Second Addendum to the
Environmental Fate and Ecological Risk Assessment for Dicamba DGA salt and its Degradate,
3,6-dichlorosalicylic acid (DCSA) for the Section 3 New Use on Dicamba-Tolerant Soybean*
(March 24, 2016), *available at* https://www.regulations.gov/docket/ EPA-HQ-OPP-2016-0187.

38.     On November 3, 2016, the EPA issued a report summarizing the data that it had
collected and reviewed regarding drift and volatility for XtendiMax®.  *See* ENVIRONMENTAL
PROTECTION AGENCY, *M-1691 Herbicide, EPA Reg. No. 524-582 (Active Ingredient: Dicamba
Diglycolamine Salt) and M-1768 herbicide, EPA Reg. No. 524-617 (AI: Diglycolamine Salt with
VaporGrip™) – Review of EFED Actions and Recent Data Submissions Associated with Spray
and Vapor Drift of the Proposed Section 3 New Uses on Dicamba-Tolerant Soybean and Cotton*
(November 3, 2016), *available at* https://www.regulations.gov/docket/EPA-HQ-OPP-2016-0187.

39.     The EPA determined that concerns about drift and volatility could be addressed
through appropriate labeling and application requirements, including the use of protective
buffers:

Furthermore, this regulatory decision includes a number of requirements that are expected to effectively limit concerns for off field risk. ***This registration action is only for a product confirmed by data to be a lower volatility formulation***. In addition, the label requires very specific and rigorous drift mitigation measures, including in-field buffers, aerial application prohibitions, boom height requirements, specific nozzle and spray pressure requirements, and wind and tractor speed limitations. These mitigations are known to profoundly impact any drift potential from pesticide application. In aggregate, these formulations and labeling requirements are expected to eliminate any off site exposures and effectively prevent risk potential to people and non-target species.

ENVIRONMENTAL PROTECTION AGENCY, *Final Registration of Dicamba on Dicamba-Tolerant Cotton and Soybean* at 29 (Nov. 9, 2016) (emphasis added).

40.     "After weighing all the risks of concern against the benefits of the new uses of [XtendiMax®]," the EPA ultimately approved both the XtendiMax® chemistry *and* its label. *Id.* at 29.

41.     The EPA had previously approved a Master Label for XtendiMax® on August 30, 2016. *See* ENVIRONMENTAL PROTECTION AGENCY, *Notification per PRN 98019 – Minor label revisions* (Aug. 30, 2016), *available at* https://www3.epa.gov/pesticides/chem_search/ppls/000524-00617-20160830.pdf.  Appended to the EPA's 2016 XtendiMax® conditional registration were approved supplemental labels for XtendiMax®'s use on Xtend crops, which included application requirements aimed at reducing drift and volatility.  These included no aerial application or application when windspeed was over 15 mph, application only with approved nozzles, and a downwind buffer of 110 feet.

42.     Prior to its registration by the EPA, XtendiMax® was scientifically and rigorously tested, each time proving to be the lowest volatility of any dicamba herbicide product on the market prior to its release and to have benefits that exceeded any risks.

43.     The EPA placed time limits on the 2016 XtendiMax® registration to allow the agency to either let it expire or to easily make changes to the registration if there were problems

with resistant weeds or "off-site incidents *potentially due to the illegal use of dicamba products that do not employ the lower volatility formulation* of dicamba DGA plus VaporGrip™ . . . ." ENVIRONMENTAL PROTECTION AGENCY, *Final Registration of Dicamba on Dicamba-Tolerant Cotton and Soybean* at 35 (Nov. 9, 2016) (emphasis added).

44.     The EPA's 2016 registration made clear that illegal applications of older formulations of dicamba, if widespread, could pose a risk to XtendiMax®'s final unconditional, continued registration. *Id.*

45.     Bayer CropScience undertook efforts to minimize the possibility of such illegal applications, including, among other things, offering extensive training regarding the appropriate dicamba formulations for use and the rules governing such applications.

46.     Bayer CropScience reasonably expected that it would be able to continue to commercialize XtendiMax® with the applicable restrictions that the EPA initially approved (and which were backed by data showing that risks of off-target movement of XtendiMax® did not outweigh its benefits), and that growers would therefore continue to reap the benefits of this breakthrough technology.

### Continued Registration With New Restrictions Based on Alleged Off-Target Movement

47.     The EPA tracks instances of alleged off-site movement of dicamba.  Indeed Bayer CropScience, as part of the terms and conditions of its XtendiMax® registration, is required to report to the EPA such alleged instances.

48.     The EPA looks at these allegations holistically, typically without considering which dicamba formulation is the source of the alleged off-target movement.  It then uses this data set, which includes illegal dicamba applications unrelated to XtendiMax®, to evaluate XtendiMax®'s continued registration, including what application restrictions to include on the XtendiMax® label.

49.     In response to crop damage incidents reported to the EPA in the 2017 planting season, and with the intent to ensure that these incidents were minimized and XtendiMax®'s registration was protected, Bayer CropScience submitted a label amendment to change XtendiMax®'s directions for use as well as a request to amend its registration to include additional terms and conditions.

50.     Though Bayer CropScience believed at the time that the reports of crop damage were in significant part due to illegal use of older, more volatile dicamba formulations, it nevertheless took aggressive and swift action to protect XtendiMax®'s registration—and its expectation in the continuing commercialization of XtendiMax®—from the deleterious association of drift from growers' off-label use.

51.     In addition to submitting a label amendment to the EPA, Bayer CropScience's commitment to ensure successful use of XtendiMax® in 2018 included:  (1) tailoring trainings based on 2017 learnings; (2) distributing spray nozzles at no cost; (3) setting up a technical support call center; (4) developing a sprayer "app" to help farmers avoid problematic weather conditions; and (5) offering free flags to mark Xtend fields.

52.     On October 12, 2017, the EPA approved the labeling proposed by Bayer CropScience as well as the additional terms and conditions of registration.  ENVIRONMENTAL PROTECTION AGENCY, *Registration Amendment – Label Amendment* at 1 (Oct. 12, 2017) *available at* https://www3.epa.gov/pesticides/chem_search/ppls/000524-00617-20171012.pdf.

53.     The approved amendment included additional restrictions further minimizing the possibility of off-field movement of the active ingredient dicamba from on-label applications of XtendiMax®.  *Id.*  Under the registration and labeling changes, XtendiMax® was designated as a Restricted Use Pesticide, requiring mandatory annual applicator training, limiting the retail sale of the product to Certified Applicators or persons under their direct supervision, and allowing

use only by Certificated Applicator or persons under their direct supervision and only for those uses covered by the Certified Applicator's certification.  *See id.* at 2.

54.     Other changes to the XtendiMax® label for the 2018 growing season included: additional record-keeping requirements; limiting applications to when maximum wind speeds are below 10 mph (from 15 mph); reducing the times during the day when applications can occur; and additional tank clean-out instruction. *Id.*

55.     The EPA extended XtendiMax®'s conditional registration for another two years on October 31, 2018.  *See* ENVIRONMENTAL PROTECTION AGENCY, *Registration Decision for the Continuation of Uses of Dicamba on Dicamba Tolerant Cotton and Soybean* (Oct. 31, 2018), *available at* https://www.epa.gov/ingredients-used-pesticide-products/registration-dicamba-use-dicamba-tolerant-crops.

### Additional Challenges to XtendiMax®'s Registration and the EPA's Response

56.     In 2017, four non-governmental organizations filed an initial legal challenge to the EPA's XtendiMax® registration, alleging that it was in violation of the Federal Insecticide, Fungicide and Rodenticide Act ("the NGO Litigation").

57.     In June 2020, the court in the initial lawsuit in the NGO Litigation vacated the EPA's registration of XtendiMax®.  The EPA responded and unconditionally registered XtendiMax® on October 27, 2020, with additional restrictions. *See* ENVIRONMENTAL PROTECTION AGENCY, *Notice of Pesticide Registration, XtendiMax with Vaporgrip Technology* (Oct. 27, 2020), *available at* https://www.epa.gov/ingredients-used-pesticide-products/registration-three-dicamba-products.

58.     The additional restrictions on XtendiMax® announced in October 2020 included requiring a volatility reduction agent as part of tank mixes, a required downwind buffer of 240 feet (and 310 feet in areas where listed endangered species are located), and new more restrictive

application cut-off dates. But EPA was not at the time prepared to take further action regarding the misuse of other forms of higher-volatility dicamba herbicides.

59.     In December 2020, four NGOs instituted a new lawsuit as part of the NGO Litigation, this time challenging the EPA's 2020 approval of XtendiMax®.  The lawsuit targets products approved for use over the top of Xtend crops, including XtendiMax®, but ignores numerous other dicamba formulations that are not approved for use over the top use of Xtend crops but are nevertheless available for purchase as a general use herbicide, such as the formulation(s) applied unlawfully by Defendant.  The lawsuit remains pending.

60.     Against this barrage of challenges, in March 2022 Bayer CropScience submitted proposed amendments to the 2020 XtendiMax® registration involving yet further additional and highly conservative use restrictions for counties with endangered species.  Also in March 2022, the EPA approved state-specific cut-off dates and temperature restrictions proposed by Minnesota and Iowa, further restricting XtendiMax®'s use.

61.     The EPA has announced that it is further reviewing XtendiMax®'s registration based on incident information from the 2021 growing season, and working to assess and implement additional restrictions.  The EPA is also currently evaluating all forms of higher-volatility dicamba pesticides in a regulatory process known as registration review.

**Illegal Dicamba Applications Threaten Bayer CropScience's
Low-Volatility XtendiMax® Product And Limit Its Use**

62.     Despite Bayer CropScience's best efforts to protect its registration and to ensure growers had access to all information necessary to apply XtendiMax® over Xtend crops without off-target movement, states have fielded complaints and allegations of off-target movement of dicamba – without regard to which formulation or manufacturer – at all times since

XtendiMax®'s initial registration.  A disproportionate number of these allegations come from southeastern Missouri, known as the Missouri Bootheel.

63.     Since XtendiMax®'s initial registration and release, state regulatory authorities, as well as the EPA, have continued to narrow the application parameters allowed with XtendiMax® in response to complaints of off-target movement from illegal applications of older formulations of dicamba that are more prone to off-target movement than XtendiMax®.

64.     While ostensibly controlling the off-target movement of dicamba, these limitations, including the narrowing of the application window for XtendiMax®, actually harm the growers who need and depend on the technology for tough-to-control weeds such as the Amaranthus species, also known as pigweed.  They also threaten Bayer CropScience's portfolio and the credibility of its technology.  Meanwhile, the limitations do not limit off-target movement caused by growers such as Defendant who unlawfully spray dicamba formulations that are not formulated to reduce volatility and contain no similar date, buffer, or weather restrictions because they are not approved for any use at all over Xtend crops.

65.     The complaints of off-target movement of dicamba have forced Bayer CropScience to expend significant human resources and undertake additional studies to continually prove that XtendiMax® is one of, if not, the least volatile dicamba formulations on the market and stays on target when applied according to its label.

66.     Even with this stewardship and the exacting limitations imposed on the use of XtendiMax®, allegations and complaints of off-target movement of dicamba, used in conjunction with Xtend crops, persist and continue unabated.

67.      Despite the widespread use of other forms of dicamba in the Bootheel region, XtendiMax® has been unfairly singled out for the majority of the blame for the alleged off-target movement in that area.

68.    Defendant's illegal dicamba applications, and other illegal applications, help demonstrate that XtendiMax® has been wrongly targeted for off-target movement of other dicamba formulations applied unlawfully, as well as for alleged damage to growers as a result.

**Biotechnology Licensing**

69.    Bayer CropScience licenses the use of Roundup Ready 2 Yield®, Roundup Ready 2 Xtend®, and XtendFlex® seed technologies only to farmers at the retail marketing level through a limited use license commonly referred to as a TSA.

70.    Farmers are not authorized to use Bayer CropScience's patented seed technologies unless they sign a TSA, agree to the terms thereof and any subsequent term thereto for each planting season in which they use the patented seed technologies, and abide by those terms.

71.    Among others things, the express terms of the TSA prohibit licensees from saving harvested seed containing the patented technologies for planting purposes, or from selling, transferring or supplying saved seed to others for planting. The use of the licensed seed is expressly limited to the production of a single commercial crop.

72.    Licensees are also expressly prohibited by the terms of the TSA from purchasing or receiving seed containing the patented technologies from unauthorized dealers, from applying unapproved and unlabeled herbicides over crops grown from seed containing the patented technologies (*e.g.*, dicamba herbicides without an EPA registration for application on Roundup Ready 2 Xtend® and XtendFlex® crops), or from applying dicamba herbicide in a way that violates the law, such as applying after the "cut-off" date. These prohibitions are further reinforced by the annual TUG and TSA, to which licensees further agree to abide by.

**Product Labeling**

73.     Bayer CropScience places on the labeling of its bags and multi-bag containers containing Roundup Ready 2 Yield® seed technology the required statutory notice that its Roundup Ready 2 Yield® technology is patented. In particular, each bag and multi-bag container of Roundup Ready 2 Yield® seed is marked with notice, either directly or via link to a virtual marking website, of at least the '945 patent.

74.     Bayer CropScience places on the labeling of its bags and multi-bag containers containing Roundup Ready 2 Xtend® or XtendFlex® seed technology the required statutory notice that its Roundup Ready 2 Xtend® or XtendFlex® technology is patented. In particular, each bag and each multi-bag container of Roundup Ready 2 Xtend® or XtendFlex® seed is marked with notice, either directly or via link to a virtual marking website, of at least the '945 and '729 patents.

**Unauthorized Activities under Licensing Agreement**

75.     Bayer CropScience does not authorize (and specifically prohibits under the language of the TSA) the planting of saved Roundup Ready 2 Yield® seed. The planting of saved Roundup Ready 2 Yield® seed is both a breach of contract and an infringement of Bayer CropScience's patent rights, including the '945 patent.

76.     Bayer CropScience does not authorize (and specifically prohibits under the language of the TSA) the transfer of saved Roundup Ready 2 Xtend® and XtendFlex® seed. The transferring of saved Roundup Ready 2 Xtend® or XtendFlex® seed is both a breach of contract and an infringement of Bayer CropScience's patent rights, including the '945 and '729 patents.

77.     Bayer CropScience does not authorize (and specifically prohibits under the language of the TSA and the incorporated TUG) the application of unapproved and unlabeled dicamba-based herbicides to Roundup Ready 2 Xtend® and XtendFlex® soybeans. The

application of unapproved and unlabeled dicamba-based herbicides to Roundup Ready 2 Xtend®
or XtendFlex® soybeans, as well as the application of dicamba-based herbicides to Roundup
Ready 2 Xtend® and XtendFlex® soybeans after the applicable cut-off date, is both a breach of
contract and an infringement of Bayer CropScience's patent rights, including the '729 patent.

78.     In addition, negligent applications of dicamba herbicides to Roundup Ready 2
Xtend® and XtendFlex® soybeans, as occurred here, further harm Bayer CropScience and
tortiously interferes with its business expectancy with the EPA and its grower customers.

**B.  Defendant's Misconduct**

79.     Defendant agreed to the terms of the TSA when he signed it in 2010. He further
was sent annual updates of the TSA and TUG, in accordance with the terms of the TSA,
including, but not limited to, in 2021 and 2022 prior to the soybean seasons. Defendant further
made purchases of Roundup Ready 2 Yield®, Roundup Ready 2 Xtend® and/or XtendFlex®
soybean seed in 2020, 2021 and 2022, and thus agreed to abide by the updated terms and
conditions of each of those years' respective TSAs and TUGs.  The annual TSAs and TUGs also
put Defendant on notice of Bayer CropScience's patents, including the '945 and '729 patents.

80.     Any making, use, offers to sell, or sale of the patented seeds saved by Defendant,
therefore, constitutes direct and willful patent infringement.  Rather than lawfully enter into a
license and fully pay for the technology, Defendant has, for at least the 2020, 2021 and 2022
soybean seasons, knowingly, intentionally, and willfully made, used, offered to sell, and/or sold
saved Bayer CropScience's patented soybean seed, without authorization.

81.     Such making, using, offering to sell, and/or selling by Defendant, without
authorization from Bayer CropScience, was a willful violation of Bayer CropScience's patent
rights and the express language of the TSA.

82.     In at least the 2020, 2021, and 2022 soybean seasons, Defendant knowingly, intentionally, and willfully committed patent infringement by making, using, offering to sell, and/or selling Roundup Ready 2 Yield®, Roundup Ready 2 Xtend® and/or XtendFlex® soybean seed, which was saved from a prior year's harvest of Roundup Ready 2 Yield®, Roundup Ready 2 Xtend® and/or XtendFlex® soybeans, without authorization from Bayer CropScience.

83.     In at least the 2020, 2021, and 2022 soybean seasons, Defendant also knowingly, intentionally, and willfully committed patent infringement by applying unapproved and unlabeled dicamba herbicides not manufactured by Bayer CropScience to soybeans containing the Roundup Ready 2 Xtend® and/or XtendFlex® technology.  The dicamba formulations Defendant used were not manufactured, sold, distributed, or marketed by Bayer CropScience, were not approved for use over Xtend crops, and are more prone to off-target movement than XtendiMax®.  These dicamba formulations, unlike XtendiMax®, are not restricted use pesticides.

84.     In 2022, Defendant further knowingly, intentionally, and willfully committed patent infringement by applying dicamba herbicides to soybeans containing the Roundup Ready 2 Xtend® and/or XtendFlex® technology after June 30, 2022.  The dicamba formulations Defendant used were not manufactured, sold, distributed, or marketed by Bayer CropScience, cannot be legally applied over Xtend crops, and are more prone to off-target movement than XtendiMax®.  These dicamba formulations, unlike XtendiMax®, are not restricted use pesticides.

85.     Defendant harvested the soybean plants that survived the growing seasons in 2020, 2021 and 2022.

86.     Defendant violated the terms of the license he obtained from Bayer CropScience when he purchased the patented seeds at issue and then planted seeds saved from one crop in a subsequent year.

87.     Defendant further violated the terms of the license he obtained from Bayer CropScience when he applied unapproved and unlabeled dicamba-based herbicides in 2020, 2021, and/or 2022 to soybeans containing the Roundup Ready 2 Xtend® or XtendFlex® technologies at issue.

88.     Defendant further violated the terms of the license he obtained from Bayer CropScience when he applied dicamba-based herbicides after June 30, 2022, to soybeans containing the Roundup Ready 2 Xtend® or XtendFlex® technologies at issue.

## VI.     CAUSES OF ACTION

### COUNT I:
### PATENT INFRINGEMENT-Patent No. 9,944,945 (Saved Seed)

89.     Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

90.     On April 17, 2018, the '945 patent was duly and legally issued to Monsanto Technology LLC for an invention in "Soybean event MON89788 and methods for detection thereof."

91.     Monsanto Technology LLC is the owner by assignment of all rights, title and interest in and to the '945 patent.

92.     Defendant directly infringed the '945 patent, including at least one of claims 1, 3, 5 and 7, by making, using, offering to sell, or selling seed having the Roundup Ready 2 Yield®, Roundup Ready 2 Xtend® and XtendFlex® technology embodying the patented invention

without authorization from Bayer CropScience, and will continue to do so unless enjoined by this Court.

93.    Defendant's infringing activities were conducted with full knowledge and with notice that Defendant was in violation of Bayer CropScience's patent rights.

94.    Defendant's actions damaged Bayer CropScience and will continue to injure Bayer CropScience, unless and until such infringement is enjoined by this Court.

95.    Pursuant to 35 U.S.C. § 283, Bayer CropScience is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

96.    Pursuant to 35 U.S.C. § 284, Bayer CropScience is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer. Further, damages should be trebled pursuant to 35 U.S.C. § 284 in light of the Defendant's knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

97.    Defendant's infringing activity brings this cause within the purview of the exceptional case contemplated by 35 U.S.C. § 285, and thus Bayer CropScience requests the award of reasonable attorneys' fees and costs.

### COUNT II:
### PATENT INFRINGEMENT-Patent No. 7,838,729 (Saved Seed)

98.    Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

99.    On November 23, 2010, the '729 patent was duly and legally issued to Monsanto Technology LLC for an invention in "Chloroplast transit peptides for efficient targeting of DMO and uses thereof."

100.    Monsanto Technology LLC is the owner by assignment of all rights, title and interest in and to the '729 Patent.

101.    Defendant directly infringed the '729 patent, including at least one of claims 1, 5, 16, 29 and 30, by making, using, offering to sell, or selling seed having the Roundup Ready 2 Xtend® and/or XtendFlex® technology embodying the patented invention without authorization from Bayer CropScience, and will continue to do so unless enjoined by this Court.

102.    The Defendant's infringing activities were conducted with full knowledge and with notice that Defendant was in violation of Bayer CropScience's patent rights.

103.    Defendant's actions damaged Bayer CropScience and will continue to injure Bayer CropScience, unless and until such infringement is enjoined by this Court.

104.    Pursuant to 35 U.S.C. § 283, Bayer CropScience is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

105.    Pursuant to 35 U.S.C. § 284, Bayer CropScience is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer. Further, damages should be trebled pursuant to 35 U.S.C. § 284 in light of the Defendant's knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

106.    Defendant's infringing activity brings this cause within the purview of the exceptional case contemplated by 35 U.S.C. § 285, and thus Bayer CropScience requests the award of reasonable attorneys' fees and costs.

**COUNT III:**
**PATENT INFRINGEMENT-Patent No. 7,838,729**
**(Application of Unapproved Dicamba and/or Application of Dicamba**
**After the "Cut-Off" Date)**

107.    Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

108.    Defendant directly infringed the '729 patent, including at least claim 23 (which references, directly or indirectly, claims 1, 5 and 16), by applying unapproved and unlabeled dicamba herbicides to soybeans having the Roundup Ready 2 Xtend® and/or XtendFlex® technology embodying the patented invention without authorization from Bayer CropScience, and will continue to do so unless enjoined by this Court.

109.    Defendant further directly infringed the '729 patent, including at least claim 23 (which references, directly or indirectly, claims 1, 5 and 16), by applying dicamba herbicides to soybeans having the Roundup Ready 2 Xtend® and/or XtendFlex® technology embodying the patented invention after the June 30, 2022 "cut-off," which is prohibited by law by the EPA and State of Missouri.

110.    Defendant had no authorization from Bayer CropScience to apply unapproved and unlabeled dicamba, or any dicamba in an unlawful manner, to soybean seed having the Roundup Ready 2 Xtend® and/or XtendFlex® technology, and Defendant will continue to do so unless enjoined by this Court.

111.    The Defendant's infringing activities were conducted with full knowledge and with notice that Defendant was in violation of Bayer CropScience's patent rights.

112.    Defendant agreed to be bound by the terms of annual TSAs and TUGs, which Bayer provided notice of to Defendant in subsequent years, including 2021 and 2022. Those TSAs and TUGs explained to Defendant that he could not spray unapproved and unlabeled

dicamba herbicides over the top of his Roundup Ready 2 Xtend® and/or XtendFlex® crops. They also explained that Defendant could not spray dicamba herbicides in a manner that is unlawful or contrary to the herbicide label, such as by spraying after "cut off" periods mandated by the EPA and/or State of Missouri.

113.    Defendant's actions damaged Bayer CropScience and will continue to injure Bayer CropScience, unless and until such infringement is enjoined by this Court.

114.    Pursuant to 35 U.S.C. § 283, Bayer CropScience is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

115.    Pursuant to 35 U.S.C. § 284, Bayer CropScience is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer. Further, damages should be trebled pursuant to 35 U.S.C. § 284 in light of the Defendant's knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

116.    Defendant's infringing activity brings this cause within the purview of the exceptional case contemplated by 35 U.S.C. § 285, and thus Bayer CropScience requests the award of reasonable attorneys' fees and costs.

**COUNT IV:**
**BREACH OF CONTRACT FOR SAVING AND PLANTING SAVED SEED**

117.    Each and every material allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

118.    In 2010, Defendant entered into the "2010 Monsanto Technology / Stewardship Agreement" attached as Exhibit C (referred to as a "TSA"). The TSA was signed by Defendant Brian Irions, and was on behalf of himself, all entities for which he obtains seed, and all

individuals and entities having an ownership interest in any entities for which he obtains seed. The TSA is a valid and enforceable contract.

119.     The 2010 TSA was between Defendant and Monsanto Company, and later the TSAs were between Defendant and Bayer CropScience.

120.     In the 2010 TSA, Defendant agreed to be bound by the terms of subsequent TSAs, which Bayer provided notice of to Defendant in subsequent years, including 2021 and 2022.  The terms of the 2022 TSA are set forth in **Exhibit D**.

121.     Bayer CropScience, for its part, tendered performance pursuant to the TSAs by giving the Defendant the opportunity to purchase and plant seed containing Roundup Ready 2 Yield®, Roundup Ready 2 Xtend® and XtendFlex® technology. The TSAs also placed Defendant on notice of the limitations on Defendant's use of Bayer CropScience's patented seed.

122.     The conduct of Defendant in at least 2020, 2021 and/or 2022, as set forth above, is a breach of the TSAs, which, among other provisions, prohibit the saving, planting and/or transfer or sale of saved Roundup Ready 2 Yield®, Roundup Ready 2 Xtend®, and XtendFlex® technology seed or use of any portion of seed grown from newly purchased Roundup Ready 2 Yield®, Roundup Ready 2 Xtend®, and XtendFlex® seed to plant a subsequent crop.

123.     As a direct and proximate result of this breach, Bayer CropScience has been damaged and is entitled to damages for breach of the TSA, as well as reasonable attorneys' fees under the provisions of the TSA.

124.     Bayer CropScience (the non-breaching party) is entitled to damages for Defendant's breach. At a minimum, Bayer CropScience is entitled to an amount that would put it in as good a position as it would have been in if the contract had been performed, which in this case would be an amount equal to the applicable purchase price which the Defendant would

otherwise have been required to pay. Under the TSAs, Bayer CropScience is also entitled to an injunction.

**COUNT V:**
**BREACH OF CONTRACT FOR APPLYING UNAPPROVED HERBICIDE AND/OR**
**APPLYING DICAMBA HERBICIDE AFTER THE "CUT-OFF" DATE**

125.    Each and every material allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

126.    The TSAs, entered into by Defendant, placed Defendant on notice of the limitations on Defendant's use of Bayer CropScience's patented seed, including the prohibition of using that patented seed with unapproved and unlabeled herbicides, which includes unapproved and unlabeled dicamba herbicides.

127.    The TSAs further placed Defendant on notice that he was prohibited from applying herbicides if prohibited by law, such as by applying dicamba herbicides to Roundup Ready 2 Xtend® and XtendFlex® soybean seed that were not authorized for such use and applying any dicamba herbicide after the June 30, 2022 "cut-off" provided for by the EPA and State of Missouri.

128.    The TSAs incorporated the terms of the TUGs, the annual updates of which Defendant was provided with notice and further which Defendant agreed to by purchasing additional Roundup Ready 2 Xtend® and/or XtendFlex® soybean seed.  The TSAs and TUGs similarly prohibit the use of unapproved and unlabeled dicamba-based herbicides, or any dicamba-based herbicides if prohibited by law, with Roundup Ready 2 Xtend® and XtendFlex® soybean seed.

129.    The conduct of Defendant, as set forth above, is a breach of the TSAs (and the incorporated TUGs), which, among other provisions, prohibit the application of unapproved and

unlabeled dicamba herbicides, or any dicamba herbicides after the legal "cut-off" date, on or with respect to Roundup Ready 2 Xtend® and/or XtendFlex® technology seed.

130.    As a direct and proximate result of this breach, Bayer CropScience has been damaged and is entitled to damages for breach of the TSAs, as well as reasonable attorneys' fees under the provisions of the TSAs.

131.    Bayer CropScience (the non-breaching party) is entitled to damages for Defendant' breach, and an injunction. At a minimum, Bayer CropScience is entitled to an amount that would put it in as good a position as it would have been in if the contract had been performed and only approved and labeled dicamba herbicides were used prior to any legal "cut-off" dates.

**COUNT VI:**
**TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES**

132.    Each and every material allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

133.    A valid business expectancy exists between Bayer CropScience and the EPA.

134.    A valid business expectancy exists between Bayer CropScience and soybean and cotton growers in the United States who license Bayer CropScience Xtend® technology.

135.    On information and belief, Defendant had knowledge of those valid business expectancies.

136.    In particular, pesticides sold for agricultural purposes in the United States must go through a registration process with the EPA, and all the pesticides purchased by Defendant would have had labels setting forth registration numbers with the EPA. For example, Defendant purchased unapproved dicamba herbicides, which include a label identifying the EPA, although they are not labeled for use with dicamba-tolerant soybeans. Defendant knew that Bayer

CropScience similarly must register its herbicides with the EPA, and therefore has a business expectancy with the EPA and in the registration process.

137.    Similarly, Defendant is aware that Bayer CropScience's soybean and cotton customers, particularly in the Missouri Bootheel, need and depend on Xtend crops with the approved formulation of XtendiMax® for tough-to-control weeds, such as pigweed.

138.    Defendant acted to intentionally interfere with those valid business expectancies through his unauthorized application of unlabeled dicamba herbicides on dicamba-tolerant soybeans, as well as his application of dicamba herbicides after the June 30, 2022 "cut-off" for dicamba herbicides that are labeled for use with dicamba-tolerant soybeans.

139.    Defendant acted with an improper motive and lack of justification. In particular, Defendant sprayed a dicamba herbicide in an unlawful manner.

140.    As a result of Defendant's actions, Bayer CropScience has been and continues to be damaged in an amount to be determined at trial.  In particular, Defendant's applications of unlabeled dicamba, including applications after the "cut-off" date, violate the EPA registered labels, and therefore make it more difficult for Bayer CropScience to continue obtaining registrations for its approved dicamba herbicide, XtendiMax®, in the future.  Defendant's illegal applications have also directly contributed to more restrictive application conditions for XtendiMax®, decreasing the benefit of XtendiMax® for growers and thus its value for Bayer CropScience.

141.    Bayer CropScience has also been damaged as Defendant's actions, and similar conduct of others, have interfered and continue to interfere with Bayer CropScience's business expectancy with growers who need its commercialized product throughout the growing season.

## COUNT VII:
## <u>NEGLIGENCE</u>

142.    Each and every material allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it were explicitly set forth hereunder.

143.    At all times relevant to this Complaint, Defendant owed a duty of care to Bayer CropScience to only use Bayer CropScience's products, including Roundup Ready 2 Xtend® and/or XtendFlex® soybean seed, in a manner as approved by the TSAs and TUGs and not prohibited by law.

144.    Defendant purchased unapproved dicamba herbicides and applied them to dicamba-tolerant soybeans, *i.e.*, which includes Bayer CropScience's Roundup Ready 2 Xtend® and/or XtendFlex® soybean technology.  That dicamba is not labeled for such use, and it is not registered by the EPA for such use on dicamba-tolerant soybeans.  It is widely known to soybean farmers, and explained by Bayer CropScience, that only certain dicamba herbicides are labeled, and therefore lawful, for use with dicamba-tolerant soybeans, i.e., "the label is the law." Ordinarily skilled soybean farmers, and even those exercising a minimum level of skill, know this, and, therefore, do not use unlabeled dicamba herbicides on dicamba-tolerant crop precisely because they are more prone to off-target movement.

145.    Defendant's illegal application of unlabeled dicamba including after the "cut-off" date violates the EPA registered labels, and therefore makes it more difficult for Bayer CropScience to continue getting registrations for its approved dicamba herbicides (such as XtendiMax®) in the future.  Defendant's illegal applications have also directly contributed to more restrictive application conditions for XtendiMax®, decreasing the benefit of XtendiMax® for growers and its value for Bayer CropScience.  Defendant's unlawful application of unlabeled dicamba herbicides, therefore, proximately caused injury to Bayer CropScience.

146.    As a result of Defendant's action, Plaintiffs have been and continue to be damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Bayer CropScience LP and Monsanto Technology LLC pray that process and due form of law issue to Defendant requiring him to appear and answer the allegations of this Complaint, and that after due proceedings are had, there be judgment in favor of Plaintiffs and against Defendant, providing the following relief to Plaintiffs:

A.    Entry of judgment in favor of Plaintiffs and against Defendant that Defendant is infringing and has directly and indirectly infringed the '945 and '729 patents, and that such infringement has been unlawful, willful, intentional and deliberate;

B.    Entry of judgment in favor of Plaintiffs and against Defendant for damages, together with interest and costs, to compensate Plaintiffs for Defendant's patent infringement;

C.    A finding that damages should be trebled pursuant to 35 U.S.C. § 284 in light of Defendant's knowing, willful, conscious, intentional, and deliberate infringement;

D.    A finding that this case is exceptional under 35 U.S.C. § 285, thereby entitling Plaintiffs to the award of reasonable attorneys' fees and costs;

E.    Entry of judgment for breach of contract, tortious interference with Bayer CropScience's business expectancies, and negligence, including damages for each;

F.    Entry of a permanent injunction against Defendant to prevent him from making, using, saving, planting, selling, offering to sell, importing, or otherwise transferring any of Plaintiffs' patented technologies, without express written permission from Plaintiffs;

G.    Entry of a permanent injunction against Defendant to prevent him from making applications of dicamba herbicide inconsistent with that product's label;

H.      Entry of judgment in favor of Plaintiffs and against Defendant for costs, expenses, and reasonable attorneys' fees incurred by Plaintiffs; and

I.      Such other relief as the Court may deem appropriate.


Dated:  January 25, 2023

Respectfully submitted,

**THOMPSON COBURN LLP**

By */s/ Daniel C. Cox*
Daniel C. Cox, Missouri USDC, Eastern District - 38902MO
Jeffrey A. Masson, Missouri USDC, Eastern District – 60244MO
Matthew S. Bober, Missouri USDC, Eastern District – 59825MO
One US Bank Plaza
St. Louis, MO  63101
P: 314 552 6000
F: 314 552 7000
dcox@thompsoncoburn.com

*Attorneys for Plaintiffs Bayer CropScience LP and Monsanto Technology LLC*